Law Offices of Lance C. Wells, P.C.
733 W. 4th Ave, Suite 308
Anchorage, Alaska 99501
Phone: 907/274-9696
Fax: 907/277-9859
E-mail: lwells@gci.net
AK # 9206045

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| EDWARD Y. GARDNER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>FRANK LUNA, )<br>)<br>Respondent. )<br>_____ ) | Case No. 3:06-cv-00259-RRB |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO**
**DISMISS INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIMS**

**I. Facts.**

Mr. Edward Y. Gardner was convicted by a jury in the Palmer Superior Court before the Hon. Beverly W. Cutler, of murdering his estranged wife, T.S. The Alaska Court of Appeals affirmed Mr. Gardner's murder conviction. Mr. Gardner was convicted of causing the death of his wife, T.S., who was found murdered near the Willow Creek Campground off the Parks Highway. The state's theory at trial was that Mr. Gardner had a motive to kill his wife based on a real property dispute. T.S. refused to convey title to the real property she occupied back to Mr. Gardner's mother. Mr. Gardner allegedly threatened to burn down the house

on the property while T.S. and her sons were in it. See No. A-6681, Mem. Op. & J. No. 4235, 2000 Wl 799341 (Alaska App. June 21, 2000); Id., 2000 Wl 799341 at *1-2.

On July 5, 1995, Mr. Gardner visited T.S. at the house. T.S. and Mr. Gardner talked in her car. After they talked, T.S. agreed to give Mr. Gardner a ride to a cabin where he was staying. One of T.S.'s sons accompanied them. During the drive, T.S. told Mr. Gardner that she would not get back together with him until he changed. Mr. Gardner asked T.S. to give him a ride the next day to Nugen's Ranch, a substance abuse treatment center located off the Palmer-Wasilla Highway. Mr. Gardner had an appointment there on that day. T.S. agreed to give him a ride. Id. at *2.

T.S.'s body was found the next day. Her car was parked in the same spot where she dropped Mr. Gardner off the night before. She had been stabbed multiple times. Trace evidence of sperm was found in T.S.'s vagina and on her thigh. The state's expert testified that Mr. Gardner was a "possible contributor" of the sperm, based on DNA testing. Id.

At trial, Mr. Gardner's trial attorney did not contest the state's DNA identification testimony. Id. at *2. The trial attorney called her own expert witness, who testified that it was unlikely that the sperm was deposited at or near a time of T.S.'s death. The defense argued that it was more likely a

result of sexual relations between T.S. and Mr. Gardner several days before trial. Id. at *10.

Mr. Gardner was arrested outside of a remote cabin near Sucker Lake in Alaska. The troopers seized weapons, explosives, a journal that Mr. Gardner had written in, and several other items found from the cabin. These items were introduced into evidence at trial of Mr. Gardner, against him. Id. at *3 & *9-10.

Mr. Gardner's defense revolved around another man, Mr. David Brasseur. Mr. Gardner argued that Mr. Brasseur was the one who killed T.S. Mr. Brasseur was at T.S.'s house nearly every day during the summer of 1995. The defense introduced evidence that Mr. Brasseur was in love with T.S. to the point of obsession. Mr. Brasseur often referred to T.S. as his girlfriend and/or fiancée. About a week before T.S. was murdered, she told Mr. Brasseur that she did not want to be romantically involved with him, and for him to leave her alone. Id at *3 & *6-9.

On direct appeal, this court rejected Mr. Gardner's claim that the trial court erred in not admitting evidence of Mr. Brasseur's prior acts of domestic violence against another woman. Id at *6. Mr. Gardner also claimed that the trial court erred in admitting audio recordings of T.S.'s testimony from two domestic violence restraining order hearings that took place over a year before T.S.'s death. The Alaska appeals court agreed

that the trial court erred, but found that the error was harmless beyond a reasonable doubt. Id.

Mr. Gardner subsequently and timely petitioned for a hearing in the Alaska Supreme Court, but the Petition for Hearing was denied. Mr. Gardner then filed a timely Application for Post-Conviction Relief under Alaska Rule of Criminal Procedure 35.1.

Mr. Gardner's Application for Post-Conviction Relief was filed in Palmer on January 8, 2001. Over three and a half years later, on August 17, 2004, Mr. Gardner's application was dismissed on the pleadings without an evidentiary hearing being held by the Hon. Judge Beverly W. Cutler. See <u>Gardner v. State</u>, 2006 Alas. App. Lexis 52 (Alaska Ct. App. Mar. 29, 2006). Dismissal of Mr. Gardner's state application for post-conviction relief was timely appealed to the Alaska Court of Appeals.

Upon appeal, Mr. Gardner argued that the trial court judge erred in failing to conduct a representation hearing of his court-appointed attorney. Mr. Gardner argued that he was forced to accept his appointed representation. The Appellate Court found that Mr. Gardner ultimately had agreed to be represented by his appointed post-conviction relief attorney. Mr. Gardner and his court-appointed attorney had worked out their differences and proceeded with the case. Therefore, Mr. Gardner

did not show that he was prejudiced because the trial judge did not conduct a representation hearing.

The court also found that the court-appointed attorney's filing of a Supplemental Memorandum in Support of Application for Post-Conviction Relief was satisfied by Alaska Rule of Criminal Procedure 35.1(e)(2), where the post-conviction relief attorney continued to pursue defendant's ineffective-assistance-of-counsel claim and raised three additional claims. The court ultimately found that Mr. Gardner failed to establish a prima facie case of ineffective assistance of counsel where he did not show that any competent counsel would have filed a motion to suppress, that the motion would have been successful, and that he was harmed as a result of the failure to file the motion. The court further found that the court-appointed attorney was not ineffective in failing to further test the DNA of the semen found on the victim. Id. The judgment was affirmed. Id.

Subsequent to exhausting his remedies before the Alaska appellate courts, Mr. Gardner then filed with this court his habeas action pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2254.

Contained within Mr. Gardner's Amended Petition for Writ of Habeas Corpus Relief, he has raised three claims for relief. The first alleges that the trial court violated his right to confrontation. See Docket 13 at 5-8. This claim is unexhausted.

See Docket 42 at 2. Mr. Gardner's third claim alleged due process violations based on prosecutorial misconduct and improper vouching for a witness during his original trial. See Docket 13 at 10-11. This claim is also unexhausted. See Docket 42 at 2.

On June 4, 2007, this court stayed the above unexhausted issues to afford Mr. Gardner the opportunity to present these claims in state court. See Docket 68.

Mr. Gardner's second habeas claim alleges ineffective assistance of counsel. See Docket 13 at 8-10. Mr. Gardner has asserted four separate bases for his claims. Mr. Gardner alleges that his lawyer was ineffective by:

> 1) failing to seek suppression of evidence seized from his cabin (Id. at 8);
>
> 2) failing to investigate whether a warrant had been authorized for the search of his cabin for evidentiary items that were located and were introduced during his trial (Id. at 9);
>
> 3) improperly conceding the DNA evidence established him as a possible contributor of semen found in T.S.'s, his ex-wife and victim's body (Id. at 8); and
>
> 4) for failing to seek more discriminating testing of DNA evidence than had been used by the state (Id. at 9-10), and lastly failing to object to the introduction of the state's DNA evidence violated Alaska Statute AS 12.45.035 (Id. at 10).

Mr. Gardner is entitled to federal habeas relief on these claims as will be seen below.

**II. Argument.**

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2254, the statute states in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

The Supreme Court has held that a decision is "contrary to" its precedent if it "applies a rule that contradicts the governing law set forth in our cases" or if "the State Court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 406 (2000); see also Berghuis v. Thompkins, 130 S.Ct. 2250, 2259 (2010).

Petitioner must also show that the decision was unreasonable in either the application of United States Supreme Court precedent, or based on an unreasonable determination of the facts. Williams, at 409-413.

In order for this court to grant Petitioner's habeas relief, it will have to find that the state courts' decisions were "objectively unreasonable" and violated Supreme Court precedent. When applying §2254, "the Federal Court should review 'the last reasoned decision' by a State Court." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, this is the decision of the Alaska Court of Appeals.

A State Court decision is "contrary to [the Supreme] Court's clearly-established precedent if it applies a rule that contradicts the governing law set forth in [its] cases . . ." Brown v. Payton, 544 U.S. 133, 141 (2004); citing Williams at 405; and, the decision of the State Court "involves an unreasonable application of [the Supreme] Court's clearly-established precedents. . ." Id. (citing Williams at 405). In Wiggins v. Smith, the Supreme Court held that, "[I]n order for a Federal Court to find a State Court's application of our precedent 'unreasonable,' the State Court's decision must have been more than incorrect or erroneous. The State Court's application must have been 'objectively unreasonable'." 539 U.S. 510, 521 (2003); citing Lockyer at 75; Williams at 409.

The standard for ineffective assistance of counsel claims, as governed by Strickland v. Washington, 466 U.S. 668 (1984), sets forth the standards for evaluating ineffective-assistance claims, and constitutes the clearly-established federal law for

purposes of habeas review. Cheney, 614 F.3d at 994-995. This standard requires proof of both efficient performance and prejudicial effect. Strickland, 466 U.S. at 687. Under Strickland, a lawyer is ineffective when her performance "fell below an objective standard of reasonableness. . . under prevailing professional norms." Strickland, 466 U.S. at 688, quoted in Cheney, 614 F.3d at 995. The burden of proving deficient performance rests on the defendant. Id. Strickland's performance standard is "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

To establish ineffective assistance under Strickland, and in addition to proving his lawyer's deficient performance, the defendant must also establish a "reasonable probability" i.e., (1) "sufficient to undermine confidence in the outcome," that, but for the deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, quoted in Cheney, 614 F.3d at 995. The burden is on the defendant to prove prejudice. Id. This requires the defendant to show that his lawyer's performance had more than "some conceivable effect on the outcome." Id. at 963.

The Alaska courts apply the ineffective-assistance-of-counsel standards set forth in Risher v. State, 523 P.2d 421 (Alaska 1974). Risher requires that a lawyer "perform at least as well as a lawyer with 'ordinary training and skill in the

criminal law'." Id. (quoting Risher, 523 P.2d at 424). Risher requires that a defendant "only establish a reasonable doubt that the incompetence contributed to the outcome," Galvan, 397 F.3d at 1203 (quoting Risher, 523 P.2d at 425, while Strickland requires that a defendant establish "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694). (Alaska law incorporates Strickland's presumptions of competence and of sound, tactical choices.) Jones, 759 P.2d at 569 (citing Strickland, 466 U.S. at 689).

In turning to the ineffective assistance claims raised by Mr. Gardner, and set forth within his Amended Petition for Writ of Habeas Corpus, he has raised first that his trial counsel was ineffective by failing to seek suppression of evidence seized from his cabin (Id. at 8), and secondly by failing to investigate whether a warrant had authorized the search of his cabin (Id. at 9). In reviewing these claims, as well as reviewing the affidavit of his former attorney of record, Ms. Donna J. McCready, she states at ¶4:

> I did not file a motion to suppress the fruits of the search of Edward Gardner's cabin. I do not recall the reason. I do remember filing a motion in limine in which I believe I tried to exclude from the trial the guns that were found. I can't remember if I did anything about the journal excerpts, and I can't remember if they came in and/or if they were harmful to Mr. Gardner's case.

See Affidavit of Donna J. McCready previously filed with this court at Document 98.1, filed January 19, 2011, p. 2 of 3.

The problem with the affidavit of Ms. McCready is that she does not give a tactical reason for her failure to move to suppress the evidence seized from Mr. Gardner's cabin, and in no way addresses Mr. Gardner's claim that she did not determine whether or not a search warrant had been authorized for a search of the cabin.

Mr. Gardner's matter is similar to a United States Supreme Court case, _Kimmelman v. Morrison_, 477 U.S. 365, 106 S.Ct. 2574 (1986), which held in that case that the trial attorney failed to file the motion to suppress "not due to strategic considerations," but because the attorney was unaware of the search and the evidence seized in the search. _Kimmelman_, 477 U.S. at 385-386, 106 S.Ct. at 2588-2589. The trial attorney was not aware of these matters because the attorney failed to conduct an adequate pre-trial investigation, and to request discovery. The court acknowledged that there is a wide range of professionally competent assistance, and that of sound tactics motivated a failure to request discovery, ineffective assistance would not be found. _Id._

However, in _Kimmelman_, _Id._, the court found that it was presented with a situation in which there was a "total failure"

to undertake pretrial discovery. Id., 477 U.S. at 386. In these circumstances, the Court concluded that the trial attorney's performance was incompetent and not motivated by tactical considerations.

In the present case, Mr. Gardner's former counsel does not even address in her affidavit whether or not she even determined whether a search warrant had been issued, allowing a lawful search of the cabin. This does not appear to be a tactical decision, but one of incompetence. Furthermore, his former attorney of record does not allege that there were any type of exigent circumstances that would justify the search.

Alaska and Federal law safeguard Alaska residents against unreasonable searches. U.S. Constitution Amendment 4, and Alaska Constitution Article I, §14. The Alaska Constitution provides a larger amount of protection than the U.S. Constitution in issues of search. Joseph v. State, 145 P.3d 595, 605 (Alaska App. 2006). Warrantless searches are per se unreasonable unless they fall within one of the "well-delineated exceptions" to the search warrant requirement. Katz v. United States, 398 U.S. 347 (1967); Mincey v. Arizona, 437 U.S. 385, 390 (1978); Lupro v. State, 603 P.2d 468, 476 (Alaska App. 1979); Jackson v. State, 791 P.2d 1023, 1024 (Alaska App. 1990). To justify a warrantless intrusion into privacy, the state/government must prove one of the well-defined exceptions to the warrant requirement. Mapp v.

Ohio, 367 U.S. 643 (1961). Absent some recognized exceptions to the warrant requirement (former counsel Donna J. McCready has not alleged that there were any), Mr. Gardner's cabin should not have been searched, much less invaded. Katz v. United States, 389 U.S. 357 (1967); Deal v. State, 626 P.2d 1023, 1078 (Alaska App. 1980); Erickson v. State, 507 P.2d 508, 514 (Alaska App. 1973). Here, nowhere contained within the record does anyone assert that Mr. Gardner gave consent to members of law enforcement to search his cabin; nor does his former trial counsel allege this either.

If the government fails to meet its burden of justifying the search of Mr. Gardner's home, all tangible and intangible evidence is inadmissible under the exclusionary rule. New York v. Harris, 495 U.S. 14 (1990)(After determining the challenged evidence is, in some sense, a product of illegal government activity, the indirect fruits of an illegality should be suppressed from a very sufficiently close relationship to the underlying illegality.). See Wong Sun v. United States, 371 U.S. 471, 486 (1963)(holding that the exclusionary rule applies to both physical and verbal evidence obtained during, or as a direct result of, an unlawful invasion). Evidence derived from the unlawful search of Mr. Gardner's cabin was used against him at trial: guns. At no time does his former attorney of record allege that she had in any way reviewed and/or determined

whether or not a search warrant had been lawfully issued to allow the search of Mr. Gardner's cabin. By failing to do so, as well as to allow detrimental evidence to be used against Mr. Gardner at trial, constitutes ineffective assistance of counsel. There was no tactical reason for failing to move to suppress the evidentiary items derived from Mr. Gardner's cabin. To claim so is nothing more than an attempt to try to avoid any type of findings of ineffective assistance of counsel by claiming a tactical reason. Such should not be allowed to occur by this court.

In <u>Stone v. Powell</u>, 428 U.S. 456, 96 S.Ct. 3037, 49 L.Ed.2d 1067, 1976 U.S., the Supreme Court held that a state prisoner may not be granted federal habeas corpus relief challenging the admission of evidence obtained through an unconstitutional search and seizure when the state provides a full and fair opportunity to litigate a Fourth Amendment Constitutional claim. In the case of Mr. Gardner, no hearing was ever held on this issue; much less, any type of a full and fair opportunity to litigate his Fourth Amendment Constitutional claim surrounding the unconstitutional search of his cabin.

As to these claims levied by Mr. Gardner, his trial counsel's assistance with these matters was neither reasonable, nor the result of sound trial strategy. <u>Murtishew v. Woodford</u>, 255 F.3d 926, 939 (9th Cir. 2001). It is Mr. Gardner's firm

belief that, had a motion to suppress been filed, it would have been granted and, by eliminating the evidence used against Mr. Gardner as a result of the unlawful search of the cabin, it would have been "sufficient to undermine confidence in the outcome," that, but for the deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Ms. McCready had a duty to her client to first investigate whether a search warrant had even been granted, the lawfulness of the warrant, as well as a review of what items were obtained by the warrant, if any. She failed to do this. In fact, in reviewing her affidavit, it is silent as to whether or not she even determined whether a warrant was in existence. This performance by former trial counsel fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 687, 690.

In turning to Mr. Gardner's additional claims of ineffective assistance of counsel, they center upon whether his attorney was ineffective by conceding that DNA evidence established him as a possible contributor of semen found on T.S.'s body; failing to seek more discriminating testing of DNA evidence than had been used by the state; and lastly, failing to object that the introduction of the state's DNA evidence violated AS 12.45.035. See Amended Application for Habeas Relief at 8, 9 & 10.

Mr. Gardner contends that his attorney was ineffective in failing to further test the DNA of the semen found on the victim, his former wife. The original DNA test indicated that the discovered semen was consistent with Gardner's semen. In Ms. McCready's affidavit, the former trial attorney said that she had the semen tested by her own expert. The expert stated that Mr. Gardner could not be excluded as the source of the semen. The trial attorney explained that she could show that Mr. Gardner continued to have a relationship with his ex-wife after they separated, and she was able to argue, based on the expert's analysis, that the semen was consistent with Mr. Gardner having sex with his former wife "a day or days before the murder instead of the time of her death." The affidavit establishes that the trial attorney had a tactical reason for handling the DNA evidence as she did. However, Mr. Gardner's former trial attorney did not advance any statements contained within her affidavit as to why she did not have a statistical probability broken down as to the source of the DNA. See Gardner v. State, 2006 Alaska App. Lexis 52 (Alaska App. March 29, 2006). In Peters v. State, 18 P.2d 1224 (Alaska App. 2001), the Appellate Court held that the admission of DNA evidence in Mr. Peters' case was error, but ultimately concluded that the error was harmless. However, the Peters case does stand for the proposition that DNA evidence is usually accompanied by

population frequency statistics, which show the likelihood that a randomly chosen person would have the same profile as the sample. In Harmon v. State, 908 P.2d 434, the court held that DNA evidence had little probative value without these statistics. Harmon was decided in 1995.

Mr. Gardner further alleges that his trial attorney was ineffective for not objecting to the DNA evidence being admitted when there was no statistical foundation evidence as required by the 1995 version of AS 12.45.035 introduced during his trial. Under this statute, as Mr. Gardner has repeatedly pointed out in the trial court, "DNA profile" evidence must include "statistical population frequency comparisons" of the DNA evidence. This was not presented during the trial of Mr. Gardner. His former trial attorney was ineffective for failing to further analyze Mr. Gardner's DNA profile, so as to obtain a statistical population frequency comparison of the patterned chemical structures contained within the DNA profile, as well as failing to object to the state's introduction of its DNA evidence without this statistical population frequency comparison. By failing to do so, her conduct under Strickland, Id. "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 688. By failing to object to the state's introduction of DNA evidence without the statistical population frequency

comparison, there is a reasonable probability "sufficient to undermine confidence in the outcome," that, but for the deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Most other states that have considered the admissibility of DNA evidence have held that evidence of a DNA profile should not be admitted without statistical evidence to aid the jury in interpreting that evidence. See Nelson v. State, 628 A.2d 69, 76 (Delaware 1993); People v. Coy, 243 Mich. App. 283, 620 NW.2d 888, 896-898 (2000). The Alaska courts have not endorsed the admission of DNA profiles without statistical analysis. See Peters, Id. Had Mr. Gardner's former trial attorney objected to the introduction of the state's DNA evidence, it appears based upon the above case law, that the objection would have been sustained. As a result thereof, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

### III. Conclusion.

Based upon the above, it is respectfully requested that the Motion to Dismiss Ineffective-Assistance-of-Counsel Claims be denied. Mr. Gardner has shown that the Alaska Courts' decisions have constituted an unreasonable application of clearly established Federal law, warranting relief by Mr. Gardner from this court in this matter.

DATED at Anchorage, Alaska, this 22nd day of February 2011.

LAW OFFICES OF LANCE C. WELLS, P.C.

By: _/s/ Lance C. Wells_____

Attorneys for Petitioner,
Edward Y. Gardner
733 W. 4th Ave, Suite 308
Anchorage, Alaska 99501
Phone: 907/274-9696
Fax: 907/277-9859
E-mail: lwells@gci.net
AK # 9206045

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2010, a copy of the foregoing was served electronically:

Kenneth M. Rosenstein, OSPA

 /s/ Lance C. Wells